IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **JOSEPHINE WADE SMITH and RUPERT SMITH,** | ) ) ). | (Removed) |
| **Plaintiffs,** | ) ) | No.14 CV 5704 |
| v. | ) ) | Hon. Sarah L. Ellis |
| **CSX TRANSPORTATION, INC.,** | ) ) | Judge Presiding |
| **Defendant.** | ) ) ) | |

**PLAINTIFFS' RESPONSE
TO DEFENDANT'S MOTION TO DISMISS**

Josephine Wade Smith and Rupert Smith ("Plaintiffs"), by and through their attorneys, respectfully submit this response in opposition to the Rule 12(b) motion of Defendant CSX Transportation, Inc. ("CSX" or "Defendant") to dismiss the complaint.

**Summary: The Motion To Dismiss**

Defendant's motion mischaracterizes this damages action, and advances three arguments for dismissal:

(1) <u>Pre-emption</u>: that this property damage and personal injury damage action is pre-empted by the Interstate Commerce Commission Termination Act of 1995 (the "ICCTA")(49 USC § 10101 *et seq.*) and its pre-emption clause in §10501(b), which narrowly pre-empts state laws and actions (1) that affirmatively regulate

1

      train operations or (2) that are contrary to regulations of the federal Surface Transportation Board.  (Motion, at 5-10.)

(2)    <u>Failure to state a claim</u>:  that this action fails to allege specific negligent acts or omissions of CSX and because derailments "can … occur for reasons other than railroad negligence" (Motion, at p. 11), although CSX was in full control of the railroad equipment that derailed and crashed as well as the tracks from which it derailed; and

(3)    <u>Pleading</u>:   in an adjunct argument to CSX' "failure to state a claim" contention, that this state court complaint that CSX removed to this federal court has inadequately pleaded facts relating to CSX' negligence (Motion at  10).

These spurious arguments are addressed in Points I and II below – following the following introductory clarifications.

<b>Summary and Clarification:<br><u>Nature of this Action</u></b>

First, Plaintiff's action in this case is solely a claim for damages; Plaintiffs seek monetary compensation for the physical damages done to their residence (which is barely habitable in good weather) and to their health as a consequence of CSX's train's derailment and crash only feet from plaintiff's home.  That is the sole relief sought.  (*See* Complaint, Prayer for Relief, at 5.)

This is not an injunction action; this complaint does not seek any injunctive or other equitable relief that might possibly affect, much less "control" or "regulate," CSX' railroad

operations or facilities. The court should disregard CSX's arguments that are predicated, silently or expressly, on the notion that case involves injunctive relief against the railroad.

Second, focusing on the tail rather than the dog, CSX mischaracterizes this action as based on the "vibration damage" to plaintiff's property (caused by CSX' practice of overnight parking of running diesel engines adjacent to plaintiff's house). CSX' motion focuses on the vibrations as the alleged primary proximate cause of the damages. (*See, e.g,*, Motion at 1 ["Plaintiffs allege – primarily – that they suffered … damage as a result of the manner in which CSXT has operated its locomotives … -- specifically … it has parked those locomotives … on tracks adjacent to … plaintiffs' property …."].) But that is not plaintiff's causation claim.

The proximate cause of the damages to plaintiff's home was the 2012 train crash – with a multi-ton locomotive hitting the earth feet from plaintiff's home after derailing from CSX' tracks (indicating some significant speed hence momentum at the crash). *See* Complaint, ¶ 12-14. The vibration damage was an *exacerbating* condition for the property damage – by compacting the soil on plaintiffs' land, thus reducing its ability to cushion the impact of the crashing train. But as to the property damage and consequential health damages, the crash is the proximate cause.

The complaint also alleges direct damage to Plaintiffs' health from the persistent overnight vibrations from CSX' routine parking of locomotives -- with idling engines -- adjacent to the Plaintiffs' home. Defendant CSX characterizes this overnight parking in a residential Chicago neighborhood as "operating" its trains – in an effort to tuck those parked locomotives under the statutory pre-emption of train "operations." That generates the arcane legal issue of whether or not "parking" of trains that are not operating in service is a railroad "operation." But that issue arises only as to the direct vibration damages and not as to the crash damages.

3

## I. CSX' PRE-EMPTION ARGUMENT:

**THIS DAMAGES ACTION IS NOT PRE-EMPTED BY EITHER THE "REGULATORY" WING OR THE "OPERATIONS UNDER BOARD RULES" WING OF THE ICCTA PRE-EMPTION CLAUSE.**

A. <u>Introduction</u>.

As noted above, this action seeks (1) damages for injury to property (Plaintiffs' home) and consequential injury to their health (from living in the damaged house) resulting from a train derailment and crash and (2) damages to Plaintiffs' health caused directly by the persistent vibrations from CSX's overnight parked and idling locomotives adjacent to plaintiffs' home.

CSX's motion to dismiss cites no decision of any court that holds that train crash damages claims are pre-empted by the ICCTA. In the guise of a pre-emption argument, CSX is actually claiming judicial immunity for crash damages.[1]

On the parked locomotive "vibration" damages to the Plaintiffs' health, CSX's argument is that that overnight parking/idling of train engines boils down to the claim that such parking and idling is a railroad "operation" for which damages claims are pre-empted by the ICCTA. However, CSX has not cited any case addressing "parking" of trains that are not in service, or that characterizes such overnight parking as a railroad operation.

---

[1] CSX' immunity argument presumably excludes damage claims from crashes caused by violation of a Surface Transportation Board ("STB") safety rule. However, CSX does not claim any such violation in its Motion, and does not even claim that an STB rule is implicated by either the 2012 crash or the overnight idling-locomotive parking.

### B. The ICCTA "Regulatory" Pre-emption.

The ICCTA pre-emption clause is not a blanket "occupation of the field" statutory pre-emption. It is a limited pre-emption clause. Congress crafted the pre-emption language to focus on two categories of rail "transportation," as the courts and the Surface Transportation Board ("STB" or "Board") (which administers the ICCTA) have recognized.

The Tenth Circuit's comprehensive analysis in *Emerson v. Kansas City Southern Ry. Co.*, 503 F.3d 1126, 1129-1131 (10th Cir. 2007) is instructive and correct:

> The ICCTA states that "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. §10501(b). Because the ICCTA "contains an express pre-emption clause, our 'task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.' " *Sprietsma,* 537 U.S. at 62-63, 123 S.Ct. 518 (quoting *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)). The Act defines "transportation" as:
>
>> (A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and
>>
>> (B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property[.]
>
> *Id.* §10102(9)(A)-(B).
>
> While certainly expansive, this definition of "transportation" does not encompass everything touching on railroads. Subsection (A) focuses on physical instrumentalities "related to the movement of passengers or property," and subsection (B) on "services related to that movement." * * *
>
> * * * We [also] look, for instance, to rulings by the Surface Transportation Board, the agency Congress created in the ICCTA, *id.* §10102(1), and to which Congress gave "extensive authority in this area," *City of Lincoln v. Surface Transp. Bd.,* 414 F.3d 858, 861 (8th Cir.2005). * * *

5

\* \* \*

In one of its latest decisions addressing the preemptive scope of the ICCTA, the STB held:

> [T]he courts have found two broad categories of state and local actions to be preempted regardless of the context or rationale for the action. The first is any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized.
>
> Second, there can be no state or local regulation of matters directly regulated by the Board-such as the construction, operation, and abandonment of rail lines (*see* 49 U.S.C. §§ 10901-10907); railroad mergers, line acquisitions, and other forms of consolidation [citation omitted]; and railroad rates and service [citation omitted] [.]

*CSX Transp., Inc.-Petition for Declaratory Order,* 2005 WL 1024490, at \*2-\*4 (Surface Transp. Bd. May 3, 2005) (citations and footnote omitted) (denying petitions for reconsideration and reopening).

Subjecting the Railroad to state law would not cause this case to fall into either of these categories. State tort law obviously has no pre-approval component, as it … addresses wrongs that have already occurred; and if the Landowners prevail on remand, the applicable remedy under state law would not deny the Railroad the ability to operate or to proceed with an STB-approved activity.  \* \* \*

While not necessary to our conclusion, our holding is confirmed by the ICCTA's legislative history, which shows that Congress did not intend to pre-empt all state and federal law that might touch on a railroad's property or actions. For example, one House Report states:

The Conference provision [of 49 U.S.C. §10501(b)] retains this general rule [of increased exclusivity for Federal remedies], while clarifying that the exclusivity is limited to remedies with respect to rail regulation - not State and Federal law generally. For example, criminal statutes governing antitrust matters not pre-empted by this Act, and laws defining such criminal offenses as bribery and extortion, remain fully applicable unless specifically displaced, because they do not generally collide with the scheme of economic regulation (and deregulation) of rail transportation.

The legal question, therefore, is whether this state law "remedy" of damages (a) for train-crash-caused injuries and (b) for personal health injuries caused by persistent parked-train idling

vibrations adjacent to plaintiffs' home are the kind of tort remedies that "regulate" an STB-regulated railroad activity or that impermissibly intrudes into the Board's exclusive jurisdiction.

But that "exclusivity" over rail "transportation" -- which establishes the scope of Congressional pre-emption -- is limited by ICCTA §10501 to (A) equipment and facilities "related to the *movement* of passengers or property" by rail, and (B) "services related to that *movement* " (emph. added) as was emphasized by the 10th Circuit in *Emmerson, supra*.

C. **Pre-emption Analysis of the two damage claims.**

On the "crash" damages pre-emption issue: Since we presume that the STB has not authorized or regulated train derailments and crashes (and CSX does not claim any relevant regulation), there does not appear to be any conflict between judicial recovery of consequential tort damages and actual or potential federal regulation of rail transportation. Indeed, tort damages for derailment crash injuries (to property and persons) would seem to be fully consistent with federal regulation – both seek *inter alia* to discourage and prevent derailments to protect the public.

The second, and narrower legal question – on which CSX's motion focuses -- is whether the plaintiffs' direct "vibration" personal (health) injury damage claims from idling/parked trains are pre-empted as either conflicting with an STB regulation (of which none is claimed by CSX) or as effectively and significantly "regulating" train operations.

Plaintiffs suggest that in the *absence* of (a) an explicit STB regulation authorizing or overnight parking/idling of locomotives on tracks outside of rail yards or railroad facilities (which is not claimed by CSX), and (b) any effort to enjoin or limit such overnight idling or

parking by judicial remedy, there is no serious issue here.  Parking of trains overnight *between* actual railroad operations is *not* rail "transportation" itself – by definition – because it does not involve "movement" of train cars or locomotives; and accordingly it falls outside of the pre-emption provision of the statute.  And in the absence of a conflicting STB regulation authorizing overnight inter-operation idling/parking (which would itself be suspect as falling outside the Board's statutory jurisdiction) there is no conflict between a state law damages action and actual STB regulation.

>    D.  **The caselaw cited by CSX in its Motion.**

CSX' motion cites eight decisions applying or rejecting (or doing both) the ICCTA pre-emption clause as a bar to actions seeking injunctive and/or damages relief for a range of railroad situations.  As noted above, none of the cited cases is directly on point as to either "crash" caused damages or "parking/vibration" caused damages.  The caselaw cited by CSX is all distinguishable but may provide some guidance.

>    The injunction cases.

In two of the cited cases, a plaintiff's plea for injunctive relief against a railroad was rejected as pre-empted by the ICCTA, *i.e.*., by the Board's exclusive regulatory jurisdiction: *Rushing v. Kansas City S. Ry. Co.,* 194 F.Supp. 2d 493 (S.D. Miss. 2001); and *Maynard v. CSX Transportation, Inc.*, 360 F.Supp. 2d 836 (E.D. Ky. 2004). In *Rushing*, the target of the requested injunction was clearly a railroad *operation* involving *movement* of trains: operation of trains in a railroad switchyard. Similarly, in *Maynard,* the primary target of the injunction was

8

the operation of trains over a particular track; a second target (also pre-empted) was the design and construction of the new side track.

These cases insulated (by pre-emption) railroad operations and dedicated railroad property used for train operations from judicial relief. These injunction decisions, which by definition seek to restrict or prescribe -- and thereby regulate -- railroad operations and property, are irrelevant to this case which does not seek any injunctive relief.

In passing, plaintiffs observe that where an injunction would impinge on railroad (movement) operations, it has quasi-regulatory character which makes a stronger case for pre-emption than does a purely compensatory (damages) action.

<u>The eminent domain decision</u>.

In *Wisconin Central Ltd. v. City of Marshfield,* 160 F.Supp. 2d 1009, 1013 (W.D. Wis. 2000), cited by CSX (Motion, at 7), a municipal plaintiff sought to use its eminent domain powers to acquire railroad property, *i.e.*, property devoted to rail use and owned by a railroad. The court held that that acquisition was pre-empted by the ICCTA because it would terminate rail use of the property which would invade the STB's authority over "abandonment" of rail lines. Plaintiffs have no quibble with the *Marshfield* decision, but suggest that it is entirely irrelevant to the "parked idling locomotive" issues in this case.

<u>The damages cases</u>.

Two of the damages cases cited by CSX (the *Rushing* and *Maynard* cases, *supra*) involved *both* injunctive and damages claims. In both cases, the courts held that the injunction claim was pre-empted, but they divided on the damages claims.

9

In *Rushing,* the damages claim arose from the railroad's construction of a berm (on its property) that allegedly caused flooding on the plaintiffs' adjacent land. The *Rushing* court held that that damages claim was not pre-empted by ICCTA because it did not relate directly to the railroad's operation of trains in its switching yard. In *Maynard*, the damages claim arose from the construction and design of a new rail line – railroad property actually used for train operations -- which that court held was pre-empted.

In the other five damages cases cited in CSX' Motion (at 7-10), in which damages claims were held to be barred by the ICCTA pre-emption, all involved claims of injuries allegedly caused by actual train operations involving the movement of trains or by the design and/or construction of rail facilities on railroad property:

- *Friberg v. Kansas City S. Ry. Co.,* 267 F.3d 439, 444 (5th Cir. 2001) (damages claimed for blocking access to plaintiff's business due to long trains and scheduling of trains during business hours);

- *Pace v. CSX Trans., Inc.,* 613 F.3d 1066 (11th Cir. 2010) (damages claim [nuisance] arose from the construction and use of a side track);

- *Norfolk Southern Ry. Co. Petition for Declaratory Order,* 2013 WL 5891582 (S.T.B. November 4, 2013) (property damages claims arose from dust, vibration and noise generated by moving trains);

- *Guckenberg v. Wisconsin Cent. Ltd.,* 178 F.Supp. 2d 954, 958 (E.D. Wis. 2001) (damages claim based on noise, vibration from switching [moving] trains);

10

- *Villiage of Ridgefield Park v. N.Y., Susquehanna & W. Ry.,* 750 A.2d 57, 67 (N.J. 2000) (damages claim for noise and air pollution from train operations in expanded switching yard).

In contrast with those cases cited by CSX, this case (a) seeks no injunctive relief to limit or control rail operations, (b) does not address train movements, (c) does not address activities in railroad facilities, and (d) addresses only "parked" locomotives left idling on tracks in residential neighborhoods, and (e) seeks only to recover the consequential costs of such routine overnight "idling" to the nearby public.

The issue here is not the parking of the trains on railroad property; the issue is overnight idling of locomotives on tracks outside of switching yards or similar railroad facilities. This damages action for "vibration" damages either does not impinge on actual operations at all or does so to a *de minimus* extent that does not rise to a pre-empted invasion into the STB's regulatory authority.

## II.
## CSX' "FAILURE TO STATE A CLAIM" ARGUMENT
## AND ITS INADEQUATE PLEADING CONTENTION

CSX' contention that the complaint fails to adequately state (or plead) a negligence action is aimed at the 2012 derailment crash damages claim (property damage with consequential health injury) which sounds in negligence. That pleading and "failure to state a claim" argument does not (and cannot) target the idling-locomotive vibration damages claim (for consequential health deterioration) because that claim is based on intentional conduct by CSX, not negligence.

11

With respect to the derailment and crash, CSX seemingly takes the position that a plaintiff must, before discovery, have pinpointed a specific theory of what the defendant railroad did wrong, or failed to do, that constituted negligence – as if the occurrence of a derailment and crash is an ordinary event of routine frequency that does not at all suggest negligence absent some peculiar facts that must be alleged. But trains are not supposed to derail and crash, so that the occurrence of such an extraordinary and dangerous event itself raises a strong inference that someone did something wrong. In the case of a crash by a railroad operating its own equipment on its own tracks, there is only one someone in control (or supposed to be in control).

In this context -- as to the train derailment/crash -- it cannot seriously be contended that the complaint fails to provide this railroad defendant with "fair notice" of the claim within the import of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) on which CSX mistakenly relies. Defendant CSX' formulaic demand for an explicit pleading of a "duty" not to derail and crash its trains is, or should be, unnecessary to inform this railroad of its duty not to crash. (For a railroad that transports dangerous chemicals and materials across the country and through cities and villages, this is an astoundingly hypertechnical argument.)

Moreover, in Illinois, as in many states, the doctrine of *res ipsa locquitor* is available in this kind of situation to presume negligence and to throw the burden of proving a different independent causation onto the controlling party (here CSX). *See, e.g.*, *Imig v. Beck, 115 Ill. 2d 18, 26, 503 N.E.2d 324* (1986) (elements of *res ipsa locquitor*); *Collins v. Superior Air-Ground Ambulance Service, Inc.*, 338 Ill.App. 3d 812 (1st Dist. 2003) (pleading of *res ipsa* standards under Illinois fact pleading standards).

The cases on which CSX now relies for its "inadequate negligence allegations" objection do not support its argument – that the derailment allegation "does not *clearly* allege that the derailment caused damage separate and apart from the [parking vibration damage]" (Motion, at 10). That is a pleading "clarity" objection, not a substantive "failure to state a claim" argument. But if the complaint was not clear to CSX initially, the plaintiffs' claims should be clear now.

## CONCLUSION

For all of the foregoing reasons, plaintiffs request the court to deny the defendant's motion to dismiss.

Respectfully submitted,

/s/ David A. Epstein

David A. Epstein
Glenn M. Kanter
BROWN UDELL POMERANTZ & DELRAHIM, LTD.
1332 N. Halsted Street, Suite 100
Chicago, Illinois 60642

*Attorneys for Plaintiffs*

14