IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| _____ ) | | |
| JOSEPHINE WADE SMITH and RUPERT ) SMITH, ) | | |
| ) | No.14 CV 5704 | |
| Plaintiffs, ) | | |
| ) | | |
| vs. ) | Judge Sara L. Ellis | |
| ) | | |
| CSX TRANSPORTATION, INC., ) | Magistrate Judge Maria Valdez | |
| ) | | |
| Defendant. ) | | |
| _____) | | |

### CSX TRANSPORTATION, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR TO STRIKE

Defendant CSX Transportation, Inc. ("CSXT"), by its attorneys, Sean M. Sullivan, Daniel J. Mohan and Daley Mohan Groble, P.C., submits this reply memorandum in further support of its motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief may be granted, or alternatively striking certain allegations contained in the complaint.

### ARGUMENT

Plaintiffs claim personal and property damage allegedly caused by CSXT's parked and idling locomotives, and further allege that the idling locomotives "exacerbated" unspecified property damage caused by a separate train derailment. CSXT moved to dismiss the complaint because plaintiffs' claims – which are based on CSXT's operational decisions concerning transportation by rail – are preempted by the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. §§ 10101, *et seq*. (the "ICCTA"). Absent the allegations concerning

preempted activities, the complaint does not contain sufficient allegations of specific damage caused by the derailment to state a claim upon which relief may be granted. Plaintiffs make three arguments in response:

1. That ICCTA preemption only applies to claims for injunctive relief and not to common law tort claims for monetary damages (Plaintiffs' Response, at 2, 4-7);

2. That ICCTA preemption does not apply because idling locomotives are not "moving" and therefore do not constitute "transportation" within the meaning of the statute (Plaintiffs' Response, at 2, 8-9); and

3. That the complaint does not seek to recover damages caused by the idling locomotives, but only damages allegedly caused directly by the derailment (Plaintiffs' Response, at 11-12).

Plaintiffs' arguments as to the scope of ICCTA preemption are contrary to settled case law, including the cases cited and discussed in CSXT's opening memorandum which are directly on point. The ICCTA preempts all forms of state regulation over rail operations, including common law damage actions that would restrict or burden a rail carrier's operations. It is equally clear that the decision to park idling locomotives falls squarely within the parameters of rail operations over which the ICCTA preempts state remedies.

Apparently recognizing that claims based on idling locomotives *are* preempted, plaintiffs try to avoid dismissal by re-characterizing their complaint as one based solely on damage caused by the derailment. That is not, however, what they have alleged in the complaint. Plaintiffs' claims – *as stated in the complaint* – are based almost exclusively on rail activities for which all state remedies are preempted. The complaint therefore should be dismissed.

> **A.  ICCTA PREEMPTION APPLIES TO COMMON LAW DAMAGE ACTIONS**

CSXT showed in its opening memorandum that plaintiffs' damage claims are subject to ICCTA preemption because the alleged liability would arise from CSXT's decisions concerning

the operation of its trains. (CSXT Memorandum, at 7-8). As CSXT previously noted, in *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001) – a blocked crossing case – the Tenth Circuit reversed a jury verdict and damage award for plaintiffs on their common law negligence claims, and wrote:

> [N]or does the all-encompassing language of the ICCTA's preemption clause permit the federal statute to be circumvented by allowing liability to accrue under state common law, where that liability arises from a railroad's economic decisions such as those pertaining to train length, speed or scheduling. We thus hold that the Texas Anti-Blocking Statute, as well as *the Fribergs' common law claim of negligence, are preempted by the ICCTA*. (emphasis added).

In *Pace v. CSX Trans., Inc.*, 613 F.3d 1066, 1069 (11th Cir. 2010) – again cited and discussed in CSXT's opening memorandum – the Eleventh Circuit affirmed summary judgment for the defendant railroad on plaintiff's common law nuisance claim and wrote:

> Here, the language of section 10501(b) plainly conveys Congress's intent to preempt all state law claims pertaining to the operation or construction of a side track. Accordingly, *we hold that the Pace family's state law nuisance claim for monetary relief is expressly preempted by the ICCTA*. (emphasis added).

These cases recognize that "awards of damages pursuant to state tort claims may qualify as state 'regulation' when applied to restrict or burden a rail carrier's operations." *Pejepscot Industrial Park, Inc. v. Maine Central Railroad Co.*, 297 F. Supp. 2d 326, 333 (D. Me. 2003) (dismissing claim for tortious interference). As the Supreme Court wrote in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992):

> "[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."

505 U.S. at 521 (quoting *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 247 (1959). *See*, *also*, *Guckenberg v. Wisconsin Central Ltd.*, 178 F. Supp. 2d 954, 958 (E.D. Wis. 2001) ("Under the plain terms of § 10501(b), Wisconsin cannot provide its citizens with

3

'remedies,' such as a suit at common law, to redress the effect of WCL's operation of its side track because the remedies provided under the Act are 'exclusive and preempt' all other remedies."); *In re Katrina Canal Breaches Consolidated Litigation*, 2009 WL 224072 (E.D. La. 2009) (application of state law negligence principles qualifies as an attempt at state law "regulation" in respect to rail transportation).

Where, as here, a common law tort action for damages arises out of alleged conduct that is subject to the exclusive jurisdiction of the STB, the claims are preempted by the ICCTA.

### B. CLAIMS BASED ON LOCOMOTIVE PARKING OR IDLING ARE SUBJECT TO ICCTA PREEMPTION

Plaintiffs' alternative argument – that parking or idling of locomotives does not constitute rail transportation under the ICCTA – is equally untenable. The term "transportation" under the ICCTA is broadly defined to include:

(A) a *locomotive*, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, *or equipment of any kind related to the movement of passengers or property, or both, by rail*, regardless of ownership or an agreement concerning use; and

(B) *services related to that movement, including* receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, *storage*, handling, and interchange of passengers and property . . . (emphasis added).

*See*, *Cedarapids, Inc. v. Chicago, Central & Pacific R. Co.*, 265 F. Supp. 2d 1005, 1012 (N.D. Iowa 2003) (definitions of "transportation" and "rail carrier" "indicate that Congress intended for a broad grant of jurisdiction to the STB over railroad transportation and rail carriers.").

The parking or idling of locomotives plainly falls within the scope of the ICCTA. Thus, in *Association of American Railroads v. South Coast Air Quality Management District*, 622 F.3d

4

1094 (9th Cir. 2010), the Ninth Circuit held that state environmental regulations "aimed at limiting the air pollution created by idling trains" were preempted under ICCTA and wrote:

> Because ICCTA "preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation" . . . ICCTA preempts the District's rules here. (citation omitted).

622 F.3d at 1095, 1098.

In *Middlesex County Health Department v. Consolidated Rail Corporation*, 2009 WL 62444 (D. N.J. 2009), the court likewise held that efforts to enforce state environmental regulations against railroads for incidents arising out of idling locomotives were preempted under the ICCTA. The court observed that the "STB has jurisdiction over transportation over rail carriers and the tracks they use" and that transportation is defined broadly as "a locomotive, car, vehicle . . . or any equipment of any kind related to the movement of passengers or property, or both, by rail." *Id*. at *2. The court then wrote:

> This case . . . concerns railcars, the fumes they emit when idling and the tracks they travel. All of these areas are under the umbrella of federal regulatory authority. Here, Middlesex is without remedy due to explicit Congressional intent to preempt state regulation of an area historically given to federal authorities. Congress left unmistakable its powers to regulate the nation's railways. "The language of the statute could not be more precise, and it is beyond peradventure that regulation of [the rails] is under the exclusive jurisdiction of the STB."

*Id*. at *3 (quoting *Friberg*, 267 F.3d at 443).

Plaintiffs' argument that ICCTA only applies to activities in which trains or locomotives are moving is thus inconsistent with the language of the statute, the purpose of the statute and the federal courts' uniform application of the statute. Plaintiffs' reliance on *Emerson v. Kansas City Southern Ry. Co.*, 503 F.3d 1126 (10th Cir. 2007) and *Rushing v. Kansas City S. Ry. Co.*, 194 F. Supp. 2d 493 (S.D. Miss. 2001) is misplaced. Neither of those cases involved claims that arose out of conduct integrally related to transportation. In *Emerson*, the plaintiffs brought a state law

5

claim seeking to recover damages resulting from flooding alleged to have been caused by the railroad's discard of old ties into a wastewater ditch and failure to maintain the ditch. The court concluded that such acts did not relate to the instrumentalities for movement of passengers or property and thus did not constitute transportation for purposes of ICCTA preemption. 503 F.3d at 1130. In *Rushing*, plaintiffs alleged that an earthen berm constructed at the railroad's switching yard caused pooling of water on plaintiffs' property. The court held ICCTA preemption did not apply because the design and construction of the berm did not "directly relate to the manner in which the Defendant conducts its switching operations." 194 F. Supp. 2d at 501. Neither *Emerson* nor *Rushing* has any relevance to the analysis in this case, because plaintiffs' allegations here relate directly to operation of CSXT's trains. *See*, *e.g.*, *In re Katrina Canal*, at *6-7 (distinguishing *Emerson* and *Rushing* from case involving design and construction of railroad crossing, roadbed and tracks).

ICCTA preemption applies to all state laws and common law actions that have the effect of regulating rail operations. *See*, *Friberg*, 267 F.3d at 443 ("Regulating the time a train can occupy a rail crossing impacts, in such areas as train speed, length and scheduling, the way a railroad operates its trains, with concomitant economic ramifications[.]"). As expressly held in *Association of American Railroads* and *Middlesex County*, ICCTA preemption clearly applies to actions arising out of parking or idling locomotives.[1]

### C. PLAINTIFFS' CLAIMS ARE ALL BASED ON PREEMPTED ALLEGATIONS RELATED TO CSXT'S RAILROAD OPERATIONS

Plaintiffs' final effort to avoid dismissal is premised on a complete re-characterization of the complaint as one for personal injury and property damage arising from a train derailment,

---

[1] Plaintiffs offer no citation for the proposition that ICCTA preemption only applies if the state remedy conflicts with a specific STB directive. As shown in the cases cited herein, ICCTA preemption is not limited in that manner.

with allegations of parking or idling locomotives relevant only as an "exacerbating" factor. (Plaintiffs' Response, at 2-3). That is not, however, what the plaintiffs allege in the complaint. In paragraph 1, plaintiffs specifically allege:

> This is an action against the Defendant for property damage and personal injury caused by the long-term exposure of Plaintiffs and Plaintiffs' home and property to Defendant's idling locomotives. Specifically, Defendant regularly caused its locomotives to park adjacent to Plaintiffs' property with the locomotive engine running for hours-long and often overnight time periods, resulting in vibrations causing seismic damage to Plaintiffs' property and persistent exposure to engine exhaust fumes.

Everything in the complaint is driven by that underlying assertion. Nowhere in the complaint do plaintiffs state a claim that they were damaged directly and independently by the derailment. The allegations of damage are – in all cases – tied to the effects of the idling locomotives. For example, in paragraph 2, plaintiffs refer to the alleged derailment but state that it caused "even greater damage to the subject property." In paragraph 12, plaintiffs allege that the derailment caused damage to the property, but then state that the damage "was exacerbated as a result of the long term vibration damage caused by Defendant's ongoing practice of leaving its trains idling."

Count II – for "Intentional Conduct – Property Damage" – appears on its face to relate only to alleged damages caused by the parking or idling of locomotives, *not* to any derailment damages. The same is true of the supposed personal injury. Nowhere in the complaint do plaintiffs allege that they suffered personal or health injuries as a result of the derailment – the alleged health injuries (according to the complaint) arose *only* from the parking and idling of locomotives. (Complaint, ¶¶ 9, 11). Plaintiffs' assertion in their response – that they suffered damage "to their health as a consequence of CSX's train's derailment and crash only feet from plaintiff's home" – is thus contrary to what they alleged in the complaint.

7

In short, absent the allegations concerning preempted activities, the complaint does not contain sufficient allegations to state a claim upon which relief may be granted. CSXT has not argued that a negligence claim for property damage or personal injury arising out of a train derailment would under all circumstances be preempted – merely that the claims plaintiffs have alleged in this complaint are preempted. Plaintiffs may believe they can state a claim for personal injuries or property damage arising from the derailment (whether based on *res ipsa* or otherwise) without reliance on allegations related to idling or parking of locomotives or other preempted rail activities. The present complaint, however, does not do so and cannot stand once the preempted allegations are stricken. The complaint should be dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, CSXT requests that the court enter an order dismissing plaintiffs' complaint.

>Respectfully submitted,
>
>CSX TRANSPORTATION, INC.
>
>By:     /s/     Sean M. Sullivan
>           Sean M. Sullivan

Sean M. Sullivan
Daniel J. Mohan
DALEY MOHAN GROBLE, P.C.
55 West Monroe Street
Suite 1600
Chicago, IL 60603
(312) 422-9999

**CERTIFICATE OF SERVICE**

       I, Sean M. Sullivan, an attorney, certify that I caused a true copy of the foregoing **CSX Transportation, Inc.'s Reply Memorandum in Support of Motion to Dismiss or to Strike** to be served upon the attorneys listed below, by the Court's ECF system, on October 24, 2014:

David A. Epstein
Dennis E. Both
Glenn M. Kanter
BROWN, UDELL, POMERANTZ
& DELRAHM, LTD.
1332 North Halstead Street
Suite 100
Chicago, IL 60642

                                                /s/      Sean M. Sullivan
                                                    Sean M. Sullivan