**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPHINE WADE SMITH and RUPERT SMITH, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No. 14 C 5704 |
| v. | ) ) | |
| CSX TRANSPORTATION, INC., | ) ) | Judge Sara L. Ellis |
| Defendant. | ) ) | |

## OPINION AND ORDER

Plaintiffs Josephine Wade Smith and Rupert Smith filed suit against Defendant CSX

Transportation, Inc. ("CSX"), alleging that they suffered property damage and personal injury as

a result of (1) CSX's idling of locomotives on railroad tracks adjacent to their property and (2) a

September 2012 train derailment adjacent to their property.  CSX filed a motion to dismiss or

strike the Smiths' negligence and property damage claims, arguing that the claims are preempted

by the Interstate Commerce Commission Termination Act of 1995 (the "ICCTA"), 49 U.S.C.

§ 10101 *et seq.*, and otherwise fail to state a claim.  Because preemption is an affirmative

defense, the Court cannot conclude from the Complaint whether the Smiths' idling claims are

preempted, and CSX's remaining arguments are premised on the assumption that the idling

claims are preempted, CSX's motion to dismiss or strike [9] is denied.

## BACKGROUND[1]

The Smiths own and live in property at 8563 S. Rockwell, Chicago, Illinois.  Their

property abuts railroad tracks used by CSX.  Since 1989, CSX has parked locomotives adjacent

---

[1] The facts in the background section are taken from the Smiths' Complaint and are presumed true for the purpose of resolving CSX's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

to the Smiths' property, leaving the locomotives idling while parked there, sometimes for hours or even overnight.  This practice has caused vibrations to be transmitted through the ground onto the Smiths' property, causing settlement and compaction of the ground and soil.  It has also caused pollutants from the trains to enter the Smiths' property.  The Smiths have suffered from sleep deprivation, headaches, and other illnesses as a result.  They have complained to CSX to no avail.

In addition to these problems, on September 2, 2012, one of CSX's trains derailed adjacent to the Smiths' property.  This caused damage to the Smiths' property, including to their house.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## ANALYSIS

CSX argues that the Smiths' claims based on the idling of CSX trains are preempted by

the ICCTA.  As a corollary, CSX contends that once the Smiths' allegations related to idling are

dismissed or stricken, the Smiths have failed to state a negligence claim related to the September

2012 train derailment, which they concede is not preempted.

The ICCTA provides the Surface Transportation Board with exclusive jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this
> part with respect to rates, classifications, rules (including car
> service, interchange, and other operating rules), practices, routes,
> services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or
> discontinuance of spur, industrial, team, switching, or side tracks,
> or facilities, even if the tracks are located, or intended to be
> located, entirely in one State[.]

49 U.S.C. § 10501(b).  "Transportation" is defined to include locomotives, property, facilities,

and equipment "related to the movement of passengers or property, or both, by rail."  49 U.S.C.

§ 10102(9)(A).  The ICCTA's remedies "with respect to regulation of rail transportation are

exclusive and preempt the remedies provided under Federal or State law."  49 U.S.C. § 10501(b).

The fact that the Smiths seek damages under common law remedies and not injunctive relief

makes no difference to the preemption analysis, for "[state] regulation can be as effectively

exerted through an award of damages as through some form of preventive relief."  *Cipollone v.*

*Liggett Grp., Inc.*, 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992) (alteration in

original) (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S. Ct. 773,

780, 3 L. Ed. 2d 775 (1959)); *see also Suchon v. Wisconsin Cent. Ltd.*, No. 04-C-0379-C, 2005

WL 568057, at *4 (W.D. Wis. Feb. 23, 2005) ("Allowing plaintiff to obtain a monetary or

injunctive remedy by application of the state's nuisance law to defendant's actions is not

significantly different from allowing the state to impose restrictions on defendant through laws and regulations.").

Although ICCTA preemption "has been recognized as broad and sweeping," *Union Pac. R.R. Co. v. Chicago Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011), the factual circumstances of each claim must be considered to determine whether it is preempted by the ICCTA, *see In re Vermont Ry.*, 769 A.2d 648, 654 (Vt. 2000) (noting that ICCTA preemption determination is a fact-bound inquiry). More specifically, "[w]here a tort claim would interfere with 'rail transportation' or 'operation' of railroad tracks or facilities, the regulation or claim is expressly preempted. *Benson v. Union Pac. R.R. Co.*, No. 2:08-cv-331-GEB-EFB, 2008 WL 2946331, at *3 (E.D. Cal. July 25, 2008) (collecting cases). On the other hand, "where a tort claim is premised upon a railroad's activities on its property that have only a remote or incidental connection to 'rail transportation' or 'operation' of railroad tracks or facilities, but rather are 'tortious acts committed by a landowner who happens to be a railroad company, the claim is not expressly preempted by the ICCTA." *Id.* at *4 (quoting *Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1130 (10th Cir. 2007).

In a case with facts similar to those alleged here, plaintiffs filed nuisance and negligence claims, among others, alleging that railroad employees parked idling trains and blew horns in front of their property for no other reason than to harass them. *Jones v. Union Pac. R.R. Co.*, 94 Cal. Rptr. 2d 661, 665 (Cal. Ct. App. 2000). In deciding a motion for summary judgment, the court refused to find that the claim was preempted by the ICCTA, as plaintiffs had provided evidence that the idling of the train engines was not in furtherance of the railroad's operations. *Id.* at 667. The court drew the following distinction:

> If the tooting of train horns and idling of train engines for long
> periods of time in front of plaintiffs' house was necessary to

4

> reduce congestion and operate Union Pacific's railroad business
> safely and efficiently, then plaintiffs' claim is federally preempted.
> But if Union Pacific's activity in question did not further rail
> operations or was committed solely to harass plaintiffs, then
> plaintiffs' action is not federally preempted.

*Id.* at 666; *cf. Guckenberg v. Wisconsin Cent. Ltd.*, 178 F. Supp. 2d 954, 956, 958–59 (E.D. Wis. 2001) (on a motion for summary judgment, finding nuisance claim for, among other things, "idling locomotive diesel engines" that lasted "as long as several hours per episode" preempted because it "*would* interfere directly with day-to-day railway operations" and "seeks to proscribe activity undertaken by [railway] employees while conducting and facilitating traffic on their side track").

Here, the Complaint does not indicate whether the idling of trains adjacent to the Smiths' property was necessary to CSX's railroad operations. It need not, however, for preemption is an affirmative defense, one which the Smiths had no duty to anticipate in their Complaint. *See S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc.*, 697 F.3d 544, 547 (7th Cir. 2012). Because the Court cannot conclusively find that the idling of trains was necessary to CSX's railroad operations and thus that the Smiths' claims arising from the idling are preempted, the Court will not dismiss the Smiths' claims in response to CSX's motion to dismiss. Although the Smiths' claims regarding property damage and personal injury caused by exposure to the idling locomotives may ultimately be preempted, that issue is more appropriately resolved on a fully developed factual record.

Because the Court declines to find the Smiths' idling claims preempted, the Court need not reach CSX's arguments regarding whether the Smiths have stated a negligence claim based on the derailment of a CSX train in September 2012. CSX's arguments on this point are premised on the assumption that the Smiths' idling claims are preempted, but the Court has found that those claims need not be dismissed. Thus, the Smiths may continue with their

negligence claims arising both from the idling of CSX's trains and the September 2012 train derailment, developing both claims further in discovery.

## CONCLUSION

For the foregoing reasons, CSX's motion to dismiss [9] is denied.  CSX is ordered to answer the Complaint by February 10, 2015.

Dated: January 27, 2015

                                                
SARA L. ELLIS
United States District Judge