# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPHINE WADE SMITH and RUPERT SMITH, ) ) ) Plaintiffs, ) ) v. ) ) CSX TRANSPORTATION, INC., ) ) Defendant. ) | No. 14 C 5704 Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiffs Josephine Wade Smith and Rupert Smith filed suit against Defendant CSX Transportation, Inc. ("CSX"), alleging that they suffered property damage and personal injury resulting from both CSX's idling of locomotives on railroad tracks adjacent to their property and a September 2012 train derailment adjacent to their property. The Court denied CSX's motion to dismiss, finding it could not conclude at that stage that CSX's affirmative defense that the Interstate Commerce Commission Termination Act of 1995 (the "ICCTA"), 49 U.S.C. § 10101 *et seq.*, preempts the Smiths' claims. *See* Doc. 20. After the close of discovery, CSX filed the present motion for summary judgment, renewing its preemption argument and further contending that no evidence supports the Smiths' claims that the September 2012 derailment proximately caused their alleged damages. The Court grants CSX's motion for summary judgment [61]. Because CSX's decision to idle trains on tracks adjacent to the Smiths' property related to CSX's railroad operations, the Court finds the Smiths' idling claims preempted. And because the record does not contain any evidence connecting the Smiths' damages to the September 2012 derailment, the Court also grants CSX summary judgment on the Smiths' claims arising from the derailment.

# BACKGROUND[1]

The Smiths have owned and lived in property at 8563 S. Rockwell, Chicago, Illinois since 1987. Their property abuts railroad tracks (running north/south) owned by CSX and used by CSX and other railroads. For operational reasons, CSX parks or idles locomotives on the tracks running adjacent to the Smiths' property, as well as at other locations on its rail network. For example, CSX sometimes parks trains on the tracks adjacent to the Smiths' property while waiting for permission to pass through an interchange at 75th Street, where Metra commuter trains and other freight trains regularly operate on east/west tracks. Metra commuter trains have priority over all other train traffic. Additionally, CSX does not control two other interchanges that the north/south tracks cross, requiring CSX to obtain permission to cross them. Because of the number of trains traversing the tracks, trains often wait for hours to cross these interchanges.

Additionally, CSX operates an intermodal rail yard at 59th Street, located north of the Smiths' residence. This yard operates twenty-four hours a day, conducting intermodal loading and unloading. CSX does not park trains at the yard, however, because doing so interferes with the loading and unloading of the trains at the yard. This means that CSX sometimes parks or idles trains destined for the yard along the tracks adjacent to the Smiths' property because the yard is not yet ready for the trains. CSX attempts to park trains as close as possible to their destination so as to quickly move them to the yard or through an interchange.

---

[1] The facts set forth in this section are derived from CSX's Local Rule 56.1 statement of undisputed facts to the extent it comports with Local Rule 56.1. The Smiths did not participate in the Court's summary judgment procedures nor have they filed a statement admitting or disputing any of CSX's facts, as required by Local Rule 56.1(b)(3). The Court therefore treats CSX's facts as undisputed for the purposes of resolving this motion. N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) ("[D]istrict judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). The facts are taken in the light most favorable to the Smiths, the non-movants.

The Federal Railroad Administration ("FRA") and the Surface Transportation Board ("STB") oversee railroad operations. The government does not regulate how long trains can park or idle on the tracks. CSX sometimes leaves train engines running or idling when parked. For example, per CSX policy, diesel engines must be kept running when the temperature falls below forty degrees Fahrenheit so as to avoid freeze-ups or damage to the engine. Additionally, if a locomotive is shut down, the train loses air pressure to its braking system. When this happens, FRA regulations require an air test before the train operates again, which could take several hours to complete. Thus, CSX typically keeps the locomotive running when parked to keep the air brake system pressurized.

In the early morning of September 2, 2012, a CSX train rear-ended another CSX train stopped at the 75th Street interchange. The trains were operating on the eastern-most section of the tracks running adjacent to the Smiths' property, with the impact of the collision occurring north of 83rd Street, approximately three-quarters of a mile from the Smiths' house. Several cars of one of the trains derailed, with containers rolling off the rail cars and landing on the north side of 83rd Street. No train cars derailed south of 83rd Street. CSX sent a locomotive to retrieve the cars south of 83rd Street, which were pulled away without issue. CSX did not receive any property damage claims from residents living near the site of impact or derailment, except that the homeowner on whose property the containers landed claimed damage to his yard from the equipment CSX used to remove those containers.

The Smiths complain, however, that CSX's actions in parking and idling locomotives next to their property have caused damage to their property and exposed them to engine exhaust fumes. On May 12, 2011, Mrs. Smith called CSX to complain of damage to her home and physical ailments allegedly caused by the idling trains outside her home. In June 2011, she

spoke to Michael Scully, then the manager of field investigations for CSX, telling him that, because of the trains: (1) the house had a cracked foundation, (2) the home flooded because of the cracked foundation, (3) the house had mold, (4) the living room walls were cracked and separating, (5) dishes in the china cabinet were cracked, (6) the driveway was cracked and not level, and (7) her car rattled and vibrated due to the uneven surface of the driveway. She also complained that both she and her husband suffered health issues. Mrs. Smith then filled out a CSX form detailing similar damage and health problems, including inability to sleep, nerve damage, depression, and hospitalization, providing the date of the incident as December 2009. Mrs. Smith also wrote to Scully on May 26, 2012, again complaining of damage to the home, including damage to the foundation, windows, antiques, lighting fixtures, and dinnerware. The Smiths included proposals from contractors for repairs, both in the May 26, 2012 letter to Scully and again after the derailment. The amounts and repairs reflected in the proposals did not change, however.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue

4

for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where a party does not respond to a motion for summary judgment, their failure to do so does not automatically entitle the moving party to judgment on its claims, as the Court must still ensure that the moving party is entitled to judgment as a matter of law. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

## ANALYSIS

### I.   ICCTA Preemption

As it did in its motion to dismiss, CSX argues that the ICCTA preempts Smiths' claims based on the idling of CSX trains. In ruling on the motion to dismiss, the Court essentially deferred decision on the preemption issue, noting that the scope of ICCTA preemption depends on the factual circumstances of the claim. *See* Doc. 20 at 4–5. Now that the parties have completed discovery, however, the issue is ripe for decision.

The ICCTA provides the STB with exclusive jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State[.]

49 U.S.C. § 10501(b). "Transportation" includes locomotives, property, facilities, and equipment "related to the movement of passengers or property, or both, by rail." 49 U.S.C.

5

§ 10102(9)(A). The ICCTA's remedies "with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b). The fact that the Smiths seek damages under common law remedies and not injunctive relief makes no difference to the preemption analysis, for "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992) (alteration in original) (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959)); *see also Suchon v. Wis. Cent. Ltd.*, No. 04-C-0379-C, 2005 WL 568057, at *4 (W.D. Wis. Feb. 23, 2005) ("Allowing plaintiff to obtain a monetary or injunctive remedy by application of the state's nuisance law to defendant's actions is not significantly different from allowing the state to impose restrictions on defendant through laws and regulations.").

Although ICCTA preemption "has been recognized as broad and sweeping," *Union Pac. R.R. Co. v. Chicago Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011), the factual circumstances of each claim must be considered to determine whether it is preempted by the ICCTA, *see In re Vermont Ry.*, 769 A.2d 648, 654 (Vt. 2000) (noting that ICCTA preemption determination is a fact-bound inquiry). More specifically, "[w]here a tort claim would interfere with 'rail transportation' or 'operation' of railroad tracks or facilities, the regulation or claim is expressly preempted." *Benson v. Union Pac. R.R. Co.*, No. 2:08-cv-331-GEB-EFB, 2008 WL 2946331, at *3 (E.D. Cal. July 25, 2008) (collecting cases). On the other hand, "where a tort claim is premised upon a railroad's activities on its property that have only a remote or incidental connection to 'rail transportation' or 'operation' of railroad tracks or facilities, but rather are 'tortious acts committed by a landowner who happens to be a railroad company,' the claim is not

expressly preempted by the ICCTA." *Id.* at *4 (quoting *Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1130 (10th Cir. 2007)).

Here, CSX has presented uncontroverted evidence that it parks and idles trains near the Smiths' property for operational reasons, not to harass the Smiths or any other landowners who abutted the railroad tracks. Specifically, trains stop on the tracks near the Smiths' property while waiting for signal clearance to cross nearby interchanges or to load or unload containers at the intermodal yard. CSX typically idles locomotives instead of shutting engines off because, at least when temperatures fall below forty degrees Fahrenheit, CSX policy requires engines to continue running to avoid freeze-ups or engine damage. Additionally, CSX usually keeps engines running to avoid operational delays if the air brake system loses pressure, which would require an air test before operating the train again. These operational concerns establish that the parking and idling of trains for extended periods of time on tracks adjacent to the Smiths' property is necessary to the operation of CSX's railroad business. As a result, the ICCTA preempts the Smiths' claims regarding property damage and personal injury caused by exposure to the idling locomotives. *See Guckenberg v. Wis. Cent. Ltd.*, 178 F. Supp. 2d 954, 956, 958–59 (E.D. Wis. 2001) (on a motion for summary judgment, finding nuisance claim for, among other things, "idling locomotive diesel engines" that lasted "as long as several hours per episode" preempted because it "*would* interfere directly with day-to-day railway operations" and "seeks to proscribe activity undertaken by [railway] employees while conducting and facilitating traffic on their side track"); *Norfolk S. Ry. Co. v. Goldthwaite*, 176 So. 3d 1209, 1211–12, 1214 (Ala. 2015) (finding plaintiff's nuisance claims preempted by ICCTA where railroad presented evidence explaining reasons for storing and idling trains on tracks of its choosing); *Jones v. Union Pac. R.R. Co.*, 94 Cal. Rptr. 2d 661, 666 (Cal. Ct. App. 2000) ("If the tooting of train

horns and idling of train engines for long periods of time in front of plaintiffs' house was necessary to reduce congestion and operate Union Pacific's railroad business safely and efficiently, then plaintiffs' claim is federally preempted."). The Court thus grants summary judgment for CSX on the Smiths' idling claims.

## II.   Derailment Claims

In their complaint, the Smiths also include allegations that the September 2, 2012 derailment caused damage to their property and their health. But, as CSX points out, the Smiths do not allege nor did they establish during discovery that the derailment caused any damage to them or their property separate and apart from any damage allegedly caused by the locomotive idling. Nor have the Smiths produced evidence that any alleged damage arose from the derailment itself. Instead, the evidence suggests that the alleged damages arose before the derailment occurred, with Mrs. Smith complaining to CSX about the same types of damage before the derailment and submitting estimates for repairs in the same amounts and for the same work both before and after the derailment. At summary judgment, the Smiths must rely on more than mere speculation to support their claim, but they have failed to respond to CSX's motion. *See Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) ("[G]uesswork and speculation are not enough to avoid summary judgment."), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 673 F.3d 670 (7th Cir. 2016); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("Summary judgment 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999))). The only conclusion the Court can draw from the record before it is that the alleged injuries the Smiths suffered to their health relate to the parking and idling of the locomotives, not

to the September 2, 2012 derailment.  Without any evidence to suggest that the derailment caused the Smiths' damages, the Court grants summary judgment for CSX on the Smiths' claims arising from the September 2, 2012 derailment.

## CONCLUSION

For the foregoing reasons, the Court grants CSX's motion for summary judgment [61]. The Court grants summary judgment for CSX on the Smiths' complaint and terminates this case.

Dated: March 27, 2017

                                                SARA L. ELLIS
                                                United States District Judge